No. 628

First Circuit

## BIHM v. PLANTERS TRUST & SAVINGS BANK ET AL.

(October 8, 1930. Opinion and Decree.)
(December 1, 1930. Rehearing Refused.)

W. C. Perrault, of Opelousas, attorney for plaintiff, appellant.

R. Lee Garland and L. B. Sandoz, of Opelousas, attorneys for defendant, appellee.

LₑBLANC, J. This is a suit for the illegal conversion of the proceeds of a check for the sum of $429.72, which the plaintiff alleges he left with the president of the Planters Trust & Savings Bank, for collection. He avers that the proceeds were applied, over his protest, to the partial payment of a rent note of $1,000 drawn by one F. M. Griffin, which was held by the liquidation of the Planters Bank & Trust Company. The latter bank had failed and its assets were taken over by the Planters Trust & Savings Bank. To secure a large note taken in the settlement, some of the assets were mortgaged, and among these was the rent note referred to. Because of this joint pecuniary interest of the two banks, plaintiff avers that he is entitled to a judgment, in solido, against them both for the full amount of his illegally appropriated check, and he so prays in his petition.

The defendants deny any improper conversion of the funds derived from the check, and aver specifically that the way in which the transaction was handled was with the full knowledge and consent of all parties interested, including the plaintiff, and it was because of this consent and turning over of this check as well as one from Griffin, and the payment of an additional amount by another party to make up the total amount of the note, that the liquidators of the Planters Bank & Trust Company released from seizure a crop of rice which had been sequestered to enforce the payment of the rent note. This conduct on the part of the plaintiff and his associates, was urged as an estoppel in bar to any of the rights claimed by the plaintiff.

The lower court held that the president of the Planters Trust & Savings Bank, in accepting the checks tendered to him, acted merely in an accommodating capacity, and his bank had incurred no liability whatever in the transaction. It also sustained the plea of estoppel on behalf of the liquidators of the Planters Bank & Trust Company. Judgment was rendered dismissing plaintiff s suit and he has appealed.

From the record we learn that on November 3, 1926, one J. B. Brock leased to F. M. Griffin, a tract of land of 230 arpents situated in the Prarie Basse neighborhood in the parish of St. Landry, for the term of three years. The consideration was the sum of $1,000 to be paid annually before the first of November of each of the years 1927, 1928 and 1929. To represent the rental price, the lessee executed three notes of $1,000 each, payable November 1st of each of the three years mentioned. These notes were paraphed by the notary in conformity with the authentic act of lease which was duly recorded in the conveyance records of the parish of St. Landry. The evidence shows that the first two notes were taken up at maturity and that the last one was held by the Planters Bank & Trust Company as collateral security on an obligation due by Brock to that bank. In April, 1929, the affairs of that bank were taken in charge by the state bank examiner and three liquidators were appointed to wind up its business. As already stated, the rent note herein referred to was among the assets mortgaged to the Planters Trust & Savings Bank in the settlement made between the two institutions.

On February 1, 1929, F. M. Griffin had subleased to B. C. Bihm, the plaintiff in this suit, 100 acres of the land which he had leased from Brock. These two parties entered into a formal agreement prepared for them by Mr. L. Austin Fontenot, attorney and notary residing at Opelousas, under the terms of which Griffin was to fur-

nish the land, water, seed-rice, gasoline, oil, etc., and make some of the advances in money to pay labor, in order to operate the farm in making a rice crop. In fact, he was to do almost everything necessary except furnish the machinery required and some labor, for a half interest in the crop. In the face of such a complete understanding and agreement, prepared as it was by an experienced attorney, and of the fact that the original lease from Brock to Griffin was recorded in the conveyance office of the parish, it is difficult to believe that Bihm did not know, as he now pretends he did not, of the existence of the $1,000 rent note.

Griffin defaulted on his part of the contract with Bihm and it became necessary for the latter to secure advances somewhere else. He applied to the Planters Trust & Savings Bank, but was not successful. The president of the bank, Mr. Larcade, suggested, however, that he apply to the Rice Growers Credit Corporation at Crowley, La., which he did, and through Mr. C. E. Carnes, the vice-president of that institution, he obtained a loan of $600. It was necessary, however, for him to execute a crop lien and pledge and in addition that he have Griffin give a chattel mortgage on some stock and cattle owned by him. Mr. Carnes, moreover, would make it appear from his testimony, that the loan was also predicated on a waiver by the liquidators of the Planters Bank & Trust Company of the rent note. He says that Mr. Larcade had given him to understand that the note had been waived. Mr. Larcade, however, testifies that he told Mr. Carnes in a telephone conversation that he thought the liquidators would agree to the waiver, but that when he mentioned the matter to them, they refused and he thereupon so notified Mr. Carnes. Inasmuch as Mr. Larcade had no authority to bind the liquidators, as far as we view the record, and, as there appears no formal waiver in the act of pledge and chattel mortgage, or otherwise, Mr. Larcade's testimony on this point is the more convincing and we accept it as stating what is the fact concerning this important question in the case.

After having obtained the advances, Bihm went to work and made a rather poor crop on the property. When the harvest came, the liquidators of the Planters Bank & Trust Company learned that he was shipping the crop and a provisional seizure was effected at once. Some of the rice was in transit and part of it had already reached Lake Charles where it was to be milled. After the seizure, Griffin and Bihm, who, under their agreement, owned each one-half of the crop, went to Crowley to obtain a settlement from Mr. Carnes through whom it had been sold. He rendered a statement which showed that there was a balance due Bihm of $429.72 and Griffin of $183.06. He issued two checks, one for each, for the respective amounts due, but he also made the Planters Trust & Savings Bank a joint payee on each check. Bihm says that he protested at having his check drawn in that way, as he claimed he was not indebted to the bank in any way, but Carnes nevertheless insisted that they remain as they were.

It is important to note that at this time the rice was under seizure in Lake Charles and that the mill had refused to honor the draft which had been drawn against it. Carnes, Griffin and Bihm were therefore very much interested in obtaining its release, and it is but natural that they should have gone to the Planters Trust & Savings Bank, joint payee of the two checks, in an effort to straighten out the whole matter. They interviewed the president, Mr. Lar-

cade, who proffered his services strictly as an accommodation for all parties concerned, and made it plain to them that his bank was not to entail any liability by reason of the seizure which had been made of the rice crop. In this he is corroborated by Mr. Carnes, and his testimony is undisputed by anyone else. We agree with the district judge, therefore, on this evidence and in view of what followed, that there is nothing in the record to show any liability on the part of the Planters Trust & Savings Bank.

Mr. Larcade testifies that at the interview referred to, both Griffin and Bihm offered their checks in settlement in full of the rent note of $1,000, and he agreed to make that offer for them to the liquidators of the Planters Bank & Trust Company. In the event this offer was not accepted, he says, it was agreed that Griffin would put up $150 additional and Carnes would pay the balance to make up the full amount of the rent note and the seizure would then be lifted. It was on this distinct agreement, he says, that the two checks were endorsed and left with him. The disputed point in his testimony is to the effect that Bihm protested at such use being made of his check and insists in saying that he left it for collection only. He also states that he left it at the suggestion of Carnes. It seems a bit singular, however, that if that was the only motive plaintiff had in leaving his check with Larcade, he would have endorsed it without any restriction or qualification, and this especially in view of the fact that it was not endorsed by the bank to which it was made jointly payable. It is significant also, that on the following morning, on being informed by Larcade that the liquidators insisted on the full amount of the note being paid, Carnes, who had suggested to Bihm that he endorse and leave his check with Larcade, gave his draft for the full amount of the difference between the amount of the two checks and the full amount of the note, not waiting for Griffin to put up the extra $150 he was to pay under the agreement. If Carnes knew, as he wishes to be understood, that Bihm wanted cash for his check, it is hard to understand why, in making up the amount to cover the note, he should have included the proceeds from that very check. Such a course leads us to believe that this was all done in accordance with the understanding between them as testified to by Mr. Larcade. These parties, including Griffin, who, strange to say, did not testify in the case, were anxious to obtain the release of this rice from seizure in order to collect the draft standing against it. They knew this could not be done without settlement of this rent note which they all knew was held by the bank. Their actions in the light of this knowledge and of the exact situation, support Mr. Larcade's version of the way in which the matter was settled. It was on the strength of that settlement, and because of it, that the bank agreed to and ordered the release of the seizure of the rice. Under such situation the plaintiff is estopped from urging the claim he now presents against the liquidators of the Planters Bank & Trust Company.

The lower court correctly rejected his demand and its judgment is affirmed.